IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA M. LEGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 6388 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| TRIBUNE COMPANY LONG TERM ) | |
| DISABILITY BENEFIT PLAN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisa M. Leger filed a complaint against defendant Tribune Company Long Term Disability Benefit Plan (the "Plan") for wrongful denial of disability benefits under § 502(a)(1)(B) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Both parties have filed motions for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed below, the court denies plaintiff's motion and grants defendant's motion.

## FACTS[1]

Plaintiff was employed by the Tribune Company ("Tribune") as a manager of program planning for WGN-TV from November 12, 1985 to June 29, 1990. At that time, plaintiff ceased working because of bilateral osteoarthritis of the knees, which required her to undergo multiple knee surgeries. Plaintiff applied for disability benefits under the Plan, which was at that time administered by CNA Insurance Companies ("CNA"). CNA, in an exercise of its discretionary

---

[1] The following facts are taken from the parties' L.R. 56.1 Statements and accompanying exhibits.

authority, found that plaintiff met the requirements for disability benefits and paid her monthly benefits equal to 60% of her salary beginning June 30, 1990.[2]

In 1996, plaintiff began seeing Dr. Hill, an orthopedic physician. In February 1996, Dr. Hill diagnosed plaintiff with bilateral patellofemoral arthritis and put her on a strengthening program of leg curls and aquatic exercises. In May 1998, Dr. Hill performed a right knee arthroscopy, at which point plaintiff's right knee improved significantly. In May 2001, Dr. Hill performed an arthroscopic debridement of plaintiff's right knee. He determined that plaintiff regained "full range of motion" in her right knee after the surgery and noted in plaintiff's medical file, "At this time the patient is doing well having minimal problems with her right knee."

In October 2001, plaintiff visited Dr. Hill for knee problems she was experiencing after acquiring and walking a new dog. From 2001 to 2004, plaintiff saw Dr. Hill for regular examinations, which demonstrated that her knee condition did not change in any "appreciative" way. In August 2004, plaintiff traveled to Greece to attend the Olympics. When she returned, she visited Dr. Hill because "the walking [in Greece] aggravated her knees."

In 2004, Tribune transferred administration of the Plan to Hartford Insurance Company ("Hartford"). Hartford continued to pay plaintiff monthly disability benefits; according to defendant, there is no evidence that Hartford performed "any significant review" of plaintiff's medical records during its time as administrator of the Plan.

Beginning January 1, 2005, Metropolitan Life Insurance Company ("MetLife") took over as administrator of the Plan. MetLife requested that plaintiff provide updated medical

---

[2]The Social Security Administration also approved disability benefits for plaintiff on September 29, 1995.

2

information. Plaintiff sent to Metlife an activities log that stated she had had sixteen knee surgeries and three foot surgeries and that she took daily narcotics for pain management, as well as sleep medication. Plaintiff stated that her activities consisted of physical therapy, reading, and helping her children with their homework; she told MetLife that she had installed handicap bars throughout her home and needed to be seated while showering. She also informed MetLife that sitting longer than fifteen minutes was very painful and that she occasionally required one to two days at a time of bed rest. Plaintiff submitted an Attending Physician Statement "APS" written by Dr. Hill, stating that plaintiff could perform sedentary work activities.

Plaintiff saw Dr. Hill on January 31, 2005. He noted in her file that she had "minimal problems with her right knee" and "ambulatory without any external aid." On March 28, 2005, Dr. Hill informed MetLife that plaintiff was "wheelchair bound" and "essentially unable to walk." He also stated, somewhat inconsistently, that plaintiff could not sit for more than one hour per day, and that she could not sit for more than thirty minutes at a time.

On July 6, 2005, R. Kevin Smith, D.O., conducted a review of plaintiff's claim for MetLife. Dr. Smith, who did not examine plaintiff, reported to MetLife that her records were consistent with bilateral osteoarthritis of the knee. Dr. Smith also acknowledged that Dr. Hill reported that plaintiff was unable to walk and could sit for only one hour a day. Dr. Smith stated to MetLife that plaintiff was capable of performing sedentary work. MetLife provided a copy of Dr. Smith's report to Dr. Hill and solicited his comments, but he did not respond.

On October 6, 2005, Grace Choi, a Vocational Rehabilitation Consultant, performed an employability assessment of plaintiff for MetLife. Ms. Choi determined that plaintiff was capable of performing work as a Customer Complaint Clerk, Bookkeeper, or Collection Clerk.

3

On October 12, 2005, MetLife informed plaintiff via letter that it was terminating her disability benefits.

Plaintiff informed MetLife of her intent to appeal the benefits denial on October 19, 2005. Plaintiff submitted an appeal of the denial of benefits, along with medical documentation of her condition. Plaintiff also included documentation of inaccuracies in Dr. Smith's review of her file. On April 22, 2006, plaintiff filed a more detailed appeal letter, complaining that MetLife's review of her condition was incomplete and inaccurate. She stated that her treating physicians were not given an opportunity to comment on MetLife's findings, and she supplied additional information, including witness statements, office notes, physical capacity evaluations, and a functional capacity evaluation ("FCE"), which showed that plaintiff was limited in her ability to sit, stand, or walk continuously for more than twenty-nine minutes.

After receiving plaintiff's appeal, MetLife sent her claim to Dr. Michael Chmell for review. Although plaintiff claims that Dr. Chmell did not review her FCE, Dr. Chmell discusses the FCE specifically in his physician review report (at p. 4), finding that it was based primarily on plaintiff's subjective complaints of pain. Dr. Chmell agreed with plaintiff's doctors that she was able to stand or walk only for brief periods. Dr. Chmell also found, however, that plaintiff was unrestricted in the use of her arms and was able to sit for an unlimited period of time. Dr. Chmell did not examine plaintiff before issuing a report to MetLife. Based on the reports of Dr. Chmell, Dr. Smith, and Ms. Choi, MetLife denied plaintiff's appeal on May 26, 2006.

## **DISCUSSION**

Plaintiff and defendant have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. Under Fed. R. Civ. P. 56(c), a court should grant a motion for summary judgment if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a

matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. See Celotrex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

Under ERISA, judicial review of a plan administrator's benefit determination is de novo unless the plan documents grant the administrator discretionary authority. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Plan documents confer discretionary authority on an administrator when they give "latitude to shape the application, interpretation, and content of the rules in each case." Diaz v. Prudential Ins. Co. of America, 424 F.3d 635, 637-38 (7th Cir. 2005). When the documents contain such language, courts apply the "arbitrary and capricious" standard of review. Houston v. Provident Life and Accident Ins. Co., 390 F.3d 990, 995 (7th Cir. 2004).

In the instant case, the parties agree that the plan documents give the administrator discretionary authority, so the court will apply the "arbitrary and capricious" standard of review. Under that standard, which plaintiff acknowledges is "extremely lenient," questions of judgment, including the weight and sufficiency of the medical and vocational evidence, are left to the administrator's discretion. Dougherty v. Indiana Bell Telephone Co., 440 F.3d 910, 917 (7th Cir. 2006). The court will uphold the administrator's decision if 'it is possible to offer a reasoned

5

explanation, based on the evidence, for a particular outcome...." Houston, 390 F.3d at 995 (internal citations omitted). The court should not overturn a plan administrator's decision unless it was "downright unreasonable." Sisto v. Ameritech Sickness & Accident Disability Benefit Plan, 429 F.3d 698, 700 (7th Cir. 2005), quoting Tegtmeier v. Midwest Operating Engineers' Pension Fund, 390 F.3d 1040, 1045.

In the instant case, defendant has advanced a reasonable explanation for its decision to terminate plaintiff's disability benefits. Defendant provided plaintiff's medical records to two of its physicians, who reviewed the file in its entirety, including plaintiff's history of surgeries and care by numerous doctors. The doctors also took into consideration statements by Dr. Hill that plaintiff was "doing extremely well" and was "ambulatory without any external aid," as well as the inconsistencies in his comments. Additionally, the doctors weighed factors such as plaintiff's trip to Athens, which required a lengthy plane trip and a great deal of walking, the acquisition of a dog that plaintiff walked frequently, and the FCE, which defendant's doctors determined was based primarily on plaintiff's own subjective complaints. Defendant then weighed the opinions of its doctors against those of plaintiff's treating physician and made a reasonable choice among conflicting medical opinions.

Plaintiff presents several arguments as to why defendant's review of her claim was arbitrary and capricious, but to no avail. Despite the fact that plaintiff's own doctor had indicated an improvement in her condition,[3] she first argues that she presented no documentation of such an improvement, which weighs heavily against the denial of benefits. As defendants

---

[3]The court also notes that in 1998, and again in 2001, plaintiff's treating physician, Dr. Hill, noted improvement in plaintiff's condition, and seemed to change his opinion only after MetLife requested updated information in early 2005.

note, however, there is no requirement under ERISA that the condition improve to terminate benefits; the decision merely has to be reasonable. See, e.g., French v. Hartford Life & Accident Ins. Co., 2006 WL 2247248, *3 (N.D. Ill. Aug. 2002).

Plaintiff also argues that defendant's doctors acted in an arbitrary and capricious manner because they did not perform a physical evaluation of her in addition to reviewing her file. The court sympathizes with plaintiff's frustration in having her benefits terminated after ten years without being examined by MetLife's doctors in person. It is reasonable, however, for a plan administrator to rely on its own physicians' review of a file – especially one as extensive as plaintiff's – without conducting an in-person evaluation: "In [disability benefit] file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation. It is reasonable, therefore, for an administrator to rely on its doctors' assessments of the file and to save the plan the financial burden of conducting repetitive tests and examinations." Davis v. Unum Life Ins. Co. of America, 444 F.3d 569, 577 (7th Cir. 2006) (upholding a denial of benefits without a physical examination of plaintiff when plaintiff had received disability benefits for more than two years and had an extensive medical history).

Finally, plaintiff argues that MetLife's physicians were biased in their review because they received payment from MetLife for their services. This court, however, must assume the physicians' neutrality "unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict." Kobs v. United Wisconsin Ins. Co., 400 F.3d 1036, 1039 (7th Cir. 2005), quoting Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan, 144 F.3d 1014, 1020 (7th Cir. 1998). Because plaintiff presented no evidence of bias other than the fact

7

that the physicians in question worked for MetLife, the court must assume that the doctors acted in a neutral manner in evaluating plaintiff's claim.

In terminating plaintiff's claim for disability benefits, defendant acted reasonably in basing its decision on the opinions of its physicians. Indeed, MetLife conducted an extensive review of plaintiff's case and considered her entire record in reaching its decision. Because defendant did not act in an arbitrary and capricious manner, the court grants defendant's motion for summary judgment and denies plaintiff's motion.

## **CONCLUSION**

For the reasons discussed above, the court grants defendant's motion for summary judgment and denies plaintiff's motion.


**ENTER:** **January 18, 2008**

　　　　　　　　　　　　　　　　　　　　_____
**Robert W. Gettleman**
**United States District Judge**